FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2006 FEB 23  PM 2: 18

GREGORY C. LANGHAM
CLERK

BY_____DEP. CLK

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action no. 06 - CV - 00318 REB- BNB

SUZANNE SHELL

v.

JOLENE DEVRIES
ANNA HALL OWEN
UNKNOWN DEFENDANT DOE

---

## COMPLAINT

---

Plaintiff Suzanne Shell ("Plaintiff" or "Shell") hereby alleges for her complaint against Defendants Jolene DeVries (DeVries") and Anna Hall Owen ("Owen"), on personal knowledge as to her own acts and on information and belief as to the actions of others, as follows:

### The Parties

1.  Plaintiff Suzanne Shell is an individual who resides in El Paso County, Colorado. Shell is the author and copyright owner of an Internet web site www.profane-justice.org. This intellectual property is registered with the United States Copyright Office (registration attached). This web site is an important component of Shell's business and is intended to be a source of income for Shell.

2.  Defendant Jolene DeVries is an individual and an attorney, Colorado Registration/Bar Number 22760, whose business address is 831 Royal Gorge Blvd. Suite 215, Canon city, CO 81212. DeVries represented Anna Hall Owen who was named as a defendant in a

1

civil rights lawsuit brought by Shell, Civil Action No. 03-RB 0743 (MJW). DeVries acted as Owen's agent with Owen's authority and on Owen's behalf. DeVries conspired with Owen to act and acted against Shell to harm Shell's business and property.

3. Defendant Anna Hall Owen is an individual and an attorney, Colorado Registration/Bar Number 22002 who lives at 2480 Kendallwood Dr., Canon City, CO, 81212 and whose business address is  417 Main St., Canon City CO, 81212. Owen operated as a Guardian ad litem for child protection cases in Fremont County. As the defendant named in the aforementioned suit brought by Shell, Owen authorized the actions taken by DeVries in her capacity as Owen's attorney. Owen conspired with DeVries to act and acted against Shell to harm Shell's business and property.

4. Unknown Defendant Doe is described by DeVries as a 'confidential source' who allegedly illegally obtained the original copies of the intellectual property, which he/she then allegedly forwarded the stolen copies of that property to DeVries and Owen.

**Jurisdiction and Venue**

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and § 1338(a), as this action arises under the copyright laws of the United States.

6. This Court is the proper venue because the  parties (1) reside in Colorado, and (2) they conduct their business primarily in Colorado, and (3) that a substantial part of the events giving rise to the claims occurred in Colorado, and (4) a substantial part of the property that is the subject of the action is situated in Colorado.

7. Because claims brought under Colorado law, are so related to Shell's federal claims, over

2

which the Court has original jurisdiction, that they form part of the same case or

controversy under Article III of the United States Constitution, this Court also has

jurisdiction over Shell's Colorado common law and statutory claims pursuant to 28

U.S.C. § 1367.

## Factual Background

8.  Unauthorized copying and distribution of works of intellectual property, such as web

    sites, is becoming a pervasive problem on the Internet. The basic nature of the copyright

    infringement (i.e., unauthorized copying and distributing) is familiar; given the speed and

    ease of reproducing and widely distributing information on the Internet, however, the

    potential harm to copyright owners is exponentially greater than the threat posed by

    traditional acts of infringement.

9.  The extensive misuse of the Internet for unlawful purposes is in part due to the nature of

    the medium. The ease with which information can be copied to and from Internet sites,

    the simplicity of efficiently downloading ever-larger files based on improved data

    compression technologies, and the relatively minor cost to a user of communicating with

    an audience of millions create unparalleled opportunities for copyright infringement. The

    relative anonymity with which Internet communications may be conducted further

    facilitates illegal conduct.

10. Unscrupulous Internet users can covertly copy and transmit to the Internet copyrighted

    web site properties (in which they have no rights and which they have no authority to

    copy or distribute) thereby making available to a worldwide audience, identical

3

reproductions of copyrighted works that can be and are further copied, distributed and used by others in virtually unlimited, and entirely uncontrolled, fashion.

11.   With the explosive growth of the Internet, online infringement at issue in this case will continue unchecked unless such acts of wholesale copying and distribution of copyrighted works is deterred by the courts, applying well-established principles of copyright law to infringing online conduct.

12.   It is undisputed that the intellectual property known as www.profane-justice.org is registered with the United States copyright office, and that said registration is prima facie evidence of the validity of the copyright in litigation for copyright infringement.

13.   It is undisputed that Shell is the copyright owner of www.profane-justice.org.

14.   It is undisputed that the literary content of www.profane-justice.org is the creation of original works by Shell and is fixed in a tangible medium of expression. There are no web site exceptions to the exclusive rights and protections afforded to authors under copyright law.

15.   At all times relevant herein, Plaintiff has complied with the Copyright Act, 17 U.S.C. §§ 101, et seq., and have secured the exclusive rights and privileges in and to the copyrights in Plaintiffs' website www.profane-justice.org. This web site contained the following copyright notice at the time of the infringing incident which is the subject of this complaint:

> COPYRIGHT NOTICE – Copyright 1996-2004 Suzanne Shell and individual contributors where appropriate. The content of this website is intended to generate income, it is not free if you intend

4

to print or distribute anything electronically fixed herein.

> Reproduction and distribution prohibited without permission. The website is intended to be viewed on a computer only. Permission to reproduce this website, by any method including but not limited to electronically or hard copy, may be purchased for $5,000 (five thousand dollars) per printed page per copy, *in advance of printing.*

16. As copyright owner, it is undisputed that Shell possess exclusive rights to reproduce the work (e.g., to make copies), to prepare derivative works (e.g., translation, abridgment, condensation, adaptation), to distribute copies to the public (e.g., publish, sell, rental, lease, license, or lending), to perform the work publicly, to display the work publicly.

17. On or about February 24, 2004 Defendants covertly, surreptitiously and stealthily entered the computer, computer system or computer network wherein Shell's web site was situated and illegally acquired and obtained a copy of a significant chapter of Shell's website, specifically 10 pages dealing with Shell's civil rights lawsuit against Owen and transmitted that copy to their computer or computers, without seeking or obtaining Shell's permission and without paying license fees and without negotiating a license fee reduction or waiver.

18. DeVries and Owen then made approximately 10 copies of that stolen property and distributed those 10 copies without seeking or obtaining Shell's permission and without paying license fees.

19. It is undisputed that DeVries and Owen refused Shell's subsequent demands to pay license fees for her intellectual property which they acquired illegally and by theft or

5

received by theft and which they copied illegally and distributed illegally.

20.     Defendants have an ongoing history of interfering with Shell's pursuit of her legal and
peaceful occupation and interfering with her business associations, and of harassing Shell
and pursuing abusive claims and actions against her. Defendants also threatened Shell
with countersuit should she seek to enforce her rights under copyright law.

21.     Defendants refused to pay license fees justifying their theft by claiming they engaged in
fair use of Shell's intellectual property. In order to invoke fair use immunity, Defendants
must first admit to copyright infringement.

22.     Shell herein asserts their use was not protected by fair use immunity for the following
reasons:

a.      DeVries asserts that "the courts have recognized 'fair use' of writings for
judicial/legal proceedings without infringing copyright laws." However, such fair
use must be predicated upon legally obtaining and purchasing the original writing
or an author's copyright protections under existing law are rendered moot. There
is no wholesale 'judicial/legal proceedings use' exception to theft of intellectual
property or infringement under copyright law. The original copies of the writings
that are the subject of this action were illegally obtained by theft, a theft that is
materially identical to the Defendants illegally entering Shell's warehouse or a
bookstore and stealing her published books to copy and submit to a court. Our
laws and the doctrine of unclean hands do not permit anyone to enjoy any
immunities associated with alleged subsequent fair use or benefit from

6

subsequent exploitation of any property which was obtained by theft in the first place.

b.   The purpose and character of the defendants' use was to seek an order from the court against Shell in the form of an award of Owen's attorney fees and costs. This is clearly a use intended to obtain a financial benefit for both of the defendants and therefore renders their use commercial in nature.

c.   The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the defendants stands to profit from exploitation of the copyrighted material without paying the posted price. The defendants intended to obtain this property for personal profit, and also wanted to avoid incurring the expense of paying the posted license fees, so they obtained it by theft, therefore the defendants's use does not meet fair use guidelines. Permission license fees are the only source of income Shell has from her web site publication. They could have avoided license fees by simply including the URL address (e.g. www.profane-justice.org) to their motion for fees and costs, so that the court could view it without anyone violating copyright. Or they could have asked for a hearing wherein they could display the subject pages from the Internet on a computer in the courtroom. Or they could have subpoenaed Shell to produce the subject property. They, instead, deliberately chose to infringe Shell's copyright rather than employ alternative methods that would not infringe her copyright nor deprive of the income associated with that use.

7

d.    The defendants' use was not transformative. It was merely a repackaging or republishing of Shell's original content. This was not a use that contributed in some way to the public welfare, and was merely intended for the sole benefit of the Defendants, therefore it does not meet fair use guidelines.

e.    The nature of the infringed work was an exclusive publication containing creative analysis and commentary about events occurring related to the lawsuit. This information was not available from any other publication or author. The defendants used Shell's publication because they claimed it proved Shell brought the suit against Owen only to harass and embarrass her. However, the Defendants' use of the stolen web site property was solely an attempt to prejudice the court against Shell and seek a ruling in favor of the defendant(s).

f.    The amount and substantiality of the work infringed consisted of the entire content involving Fremont County and Shell's competitors in Fremont County. This content was meant to stand alone as a complete representation of the concept explored. Once again, the infringed content was easily available to be legally viewed on the Internet, which meant that the defendants did not have to steal and illegally reproduce the content in the manner they did.

g.    The effect of the defendants' use on potential markets for or value of the copyrighted work has been devastating to Shell. Shell has suffered wholesale infringement of her web site without receiving any fees for that use. The precise amount of Plaintiffs' damages is difficult, if not impossible, to ascertain. It is

impossible to determine what the secondary losses are.

23.   Defendants knowingly and wilfully infringed Shell's copyright when they covertly,

stealthily and without notice to Shell, without her permission or knowledge and without

her participation, illegally converted copies of her web site to their own use, without

paying the posted license fees, and reproduced the stolen property in permanent storage

on their computer(s) and in paper copies and made approximately 10 copies of those

stolen reproductions and distributed them to others.

24.   Defendants are precluded from seeking relief from this court in the form of fair use

immunity because they have unclean hands. The defendants did not legally purchase or

pay license fees for the original copies of Shell intellectual property they obtained. The

defendants obtained their first copy of Shell's property by means of theft, therefore any

fair use immunity that might arise out of subsequent use of that property is barred under

the unclean hands doctrine.

### FIRST CAUSE OF ACTION

(Copyright Infringement Under 17 U.S.C. §§ 101 et seq.)

25.   Shell repeats and re-alleges the allegations of all preceding paragraphs of this complaint

as if fully set forth herein.

26.   Plaintiff's own copyrighted material found at or through the URL http://www.profane-

justice.org. For example, the Shell has registered with the United States Copyright Office

the following content from http://www.profane-justice.org :

a.      The above referenced 10 pages discussing Fremont County actors, attached as

9

Exhibit A.

27.   On February 24, 2004 , Defendants knowingly and wilfully infringed Shell's copyright by

illegally obtaining 10 pages of her web site from the computer, computer system or

computer network wherein her web site was situated without her permission and without

paying the posted license fees for that copying, in direct violation of her properly

displayed copyright notice and license fees and terms.

28.   Defendants knowingly and wilfully infringed Shell's copyright when they knowingly and

intentionally copied and distributed no less than 10 copies of those 10 stolen pages from

her web site, in direct violation of her properly displayed copyright notices and license

fees and terms.

29.   Defendants' acts constitute direct and/or contributory infringements of Plaintiffs'

respective copyrights in Plaintiffs' web site in violation of 17 U.S.C. §§ 101, et seq.

30.   Upon information and belief, Defendants' infringements have been committed willfully,

and have been and are being engaged in with total disregard for Plaintiffs' intellectual

property rights.

31.   Defendants are precluded from arguing fair use immunity under the unclean hands

doctrine because their  purported 'fair use' was predicated solely upon their covert and

stealthy intentional theft of the original copies of Shell's website.

32.   Alternatively, defendants' use of Shell's intellectual property is inconsistent with fair use

for reasons including but not limited to those reasons described in this complaint.

33.   As a direct cause of this infringement, Shell has suffered copyright infringement,

10

effectuation of new and further infringements, depreciation in the value of and ability to sell and license her work, lost profits and/or opportunities, and damage to her goodwill and reputation. Defendants' direct and/or contributory copyright infringement has caused, and will continue to cause, Plaintiff to suffer substantial injuries, loss and damage to her exclusive rights in Plaintiffs' web site.

34.   As a direct cause of this infringement, Shell has suffered statutory damages; and actual damages of $500,000.00.

## SECOND CAUSE OF ACTION

(Civil Theft)

35.   Shell repeats and re-alleges the allegations of all preceding paragraphs of this complaint as if fully set forth herein.

36.   On February 24, 2004, Defendants electronically and/or digitally entered Shell's web site server either located in Colorado and/or licensed by her business which operates in Colorado, wherein Shell's copyrighted web site was situated in electronic and/or digital format, and surreptitiously, stealthily and covertly and without notice to her, copied 10 pages of her web site and assumed control of those copies, and electronically and/or digitally transmitted the stolen copies of her web site pages back to defendants' computer(s) for permanent storage, without her permission, knowledge or consent, and without paying her license fees for that intentional copying and wilfully concealing from her that they had taken copies, and without paying license fees for their intended copying and distribution of her website, and wilfully concealing from her that they intended to

11

copy and distribute the stolen pages and did in fact copy and distribute about 10 copies of the stolen pages, and converted Shell's property to their own use and purpose, and refused to pay demanded license fees for those stolen copies thereby permanently depriving Shell of the use or benefit of her property.

37.   As a direct and proximate result of, and by reason of, the activities of Defendants, and their conduct among other things, Shell has suffered damages to the extent defendants illegally obtained her intellectual property by theft. Shell is, therefore, entitled to recover threefold the actual damages she has sustained together with the cost of the suit, including reasonable attorneys' and experts' fees.

## RELIEF

### (Damages)

Wherefore, plaintiff Shell demands trial by jury and judgment from the Court as follows:

a.   To award damages against each Defendant, jointly and severally, for a sum of money equal to the amount of actual damages and/or losses Shell has sustained or will sustain equaling $500,00.00; or

b.   in lieu thereof, should Plaintiff elect an award of statutory damages, pursuant to 17 U.S.C. § 504(c), against each Defendant, to be increased to the maximum permitted by law, for their acts of willful infringement;

c.   To treble the amount of said damages pursuant to § 18-4-405 C.R.S. for civil theft;

d.   To award punitive damages pursuant to Colorado statutory or common law;

12

e.     That the Court award plaintiff her costs, including attorneys' fees, pursuant to 17

       U.S.C. § 505; and

f.     To enjoin Defendants from all future copyright infringement and theft of

       intellectual property, and to require them to pay license fees or to negotiate

       reductions or waivers of license fees for their acquisitions of intellectual property;

g.     To award prejudgment interest on the amount of damages and/or losses that Shell

       has sustained;

h.     To award such other and further relief as the Court deems just and equitable.


Respectfully Submitted February 23, 2006

                                        _____
                                          Suzanne Shell
                                          14053 Eastonville Rd.
                                          Elbert, CO 80106
                                          (719)749-2971

13

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES ~~~~~~

TX 5-987-307

TXU

**EFFECTIVE DATE OF REGISTRATION**

Mar 15 2004

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1** TITLE OF THIS WORK ▼
profane-justice.org

PREVIOUS OR ALTERNATIVE TITLES ▼
American Family Advocacy Center web site

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.     Title of Collective Work ▼

If published in a periodical or serial give   Volume ▼          Number ▼          Issue Date ▼          On Pages ▼

---

**2**

**a** NAME OF AUTHOR ▼
Suzanne Shell

DATES OF BIRTH AND DEATH
Year Born ▼  1956     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☑ No
Pseudonymous?  ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Text, content

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
2004  ◀Year in all cases.

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶ 02   Day ▶ 14   Year ▶ 2004
USA   ◀ Nation

---

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Suzanne Shell
14053 Eastonville Rd., Elbert, CO 80106

APPLICATION RECEIVED
MAR 15 2004
ONE DEPOSIT RECEIVED
MAR 15 2004
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

---

MORE ON BACK ▶  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.     • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of __ pages

| EXAMINED BY | | FORM TX |
|---|---|---|
| CHECKED BY | | |
| CORRESPONDENCE ☐ Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☐ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▶          Year of Registration ▶

**5**

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material. Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

Material Added to This Work. Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**6**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼          Account Number ▼

**a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼
Suzanne Shell
14053 Eastonville Rd.
Elbert, CO 80106

**b**

Area code and daytime telephone number ▶ 719-749-2971          Fax number ▶
Email ▶ dashell@ix.netcom.com

**7**

**CERTIFICATION** I, the undersigned, hereby certify that I am the
Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Suzanne Shell          Date ▶ 2-26-2004
Handwritten signature (X) ▼

**9**

Certificate will be mailed in window envelope to this address:
Name ▼ Suzanne Shell
Number/Street/Apt ▼ 14053 Eastonville Rd
City/State/ZIP ▼ Elbert, CO 80106

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.
Rev: July 2000—xxx   Web Rev: July 2000.  ⊕ Printed on recycled paper          U.S. Government Printing Office: 2000-461-113/20,021

EXHIBIT A  Shell v. DeVries et al

1983Suit

IN ASSOCIATION WITH
amazon.com

This web site is
Sponsored by
LibertyActivist. We
thank them for
their generous
support!

- Home
- FAQ
- Documents
- Links
- Lawyers
- State by State
- Donate
- Praxismarch
- Editorials
- Sage Wisdom

Interested in Family Rights Training?
See Unauthorized Practice of Law Information
See Sage Wisdom Press Publications purchase *Profane Justice*, books and more
See how to get your videos of CPS abuses broadcast
Family Rights Amendment to state constitution
Make a donation

Make a Donation

## LAWSUIT IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO CIVIL ACTION NO. 03-RB-1743 (MJW)

If ever it was possible for a woman with no money, no attorney and an I.Q of 85 to win a lawsuit against 5 attorneys and a corrupt and abusive government agency because she has been wronged and the law is on her side, this great country is the place where that is supposed to happen. The question to be resolved is, does the rule of law really apply in our courts or will politics decide the outcome?

1983suit

**Contact Us**
**Shelly, DHS**
**Training**

Warning &
Disclaimer
We Believe. . .
Our Mission
Our Promise
Why We Are Here
What YOU Must
Do
Advocacy &
Retaliation

Disclaimer. While a member
of AFRA, AFAC does not
enjoy the support of AFRA
due to AFAC's
uncompromising
'controversial' stand on
exposing unethical and
incompetent self-professed
"advocates."

Last Updated December 18, 2003

## BACKGROUND

On April 15, 2003, a series of events was set into motion by
state actors and their cohorts who oppose the activities of the
American Family Advocacy Center's (AFAC) scrutiny into
child protection practices. Their actions were designed to
prevent our director, Suzanne Shell, from having any contact
with a parent whose child was taken by Fremont County,
Colorado Department of Humans Services (DHS) for allegedly
having untreated head lice. Ashley has contracted lice once or
twice at school, which April and Christine promptly treated.
April Fields has been subjected to constant harassment by the
school nurse (making multiple documented *false* reports of
head lice) and by DHS because they believe she should not
have care of her daughter. April and Ashley live safely with
April's mom, Christine Korn and her two younger brothers,
Bill and Cody. April refused their efforts to make her get her
own place, believing she was better able to care for her child in
her extended family home. The living arrangement is beneficial
to all household members who have the right to live together as
a family without any state agency interfering.

## PLAYERS

**Suzanne Shell** - Director, American Family Advocacy Center

**April Fields** - A parent who requested help from AFAC. She is 32 and a high school graduate. She is a
remarkable woman who has exhibited an extraordinary courage in the face of her oppressors.

**Ashley** - April's daughter (8). She has suffered the most, to the great despair of her mother. Ashley is terrified of
DHS and her GAL because of her fear that they will take her away from her mom again.

**Christine Korn** - April's mom, who is helping her daughter due to April's disability which includes epilepsy and
developmental delay with I.Q. of 85. April lives with Christine, is the primary caregiver for Ashley and maintains
the house while Christine works.

**Rocco Meconi** - Fremont County Attorney representing Fremont County DHS

http://www.profane-justice.org/html/1983suit.html

2/24/2004

### SETTLEMENT OFFER:

**TO THE FIRST DEFENDANT
NAMED IN THIS LAWSUIT
WHO WISHES TO SETTLE**
Suzanne will settle on the
following terms:

- **$1.00 damages,**
- **your admission of guilt and**
- **you will reveal all regarding
  policies, customs and
  practices.**

Contact Suzanne for full details.
This offer may be withdrawn at any time
without notice.

1983 Suit

Page 3 of 10

If you find the information on this website valuable, this information in Profane Justice (even more valuable. Every parent needs this book in their library.) will find the Buy now.

Christian Family Rights Association

Get Acrobat Reader

**Dawn Rivas** - DHS caseworker assigned to Fields' case. She appears to be the front line puppet who is being used to forward the agendas of the other defendants. She has made it clear that her paycheck is more important to her than any issue of right or wrong or Ashley's well being. She has also made it clear that if April dropped the lawsuit, DHS would not be a threat to Ashley. She, along with her watchdog-in-attendance, Wanda Duval, has been a valuable source of inside information.

**Todd Hannenberg** - Rivas' immediate supervisor, allowing his and his caseworker's professional discretion to be overridden by the agenda of the county attorney. Another apparent puppet who has sold his professional integrity for his paycheck.

**Steve Clifton** - Director of Fremont County DHS. Suzanne has had dealings with him as far back as 1997. He reportedly left his previous post in Teller County, at the request of the County Commissioners due to an alleged shortfall of funds reported by one of the former county commissioners to be in the neighborhood of $400,000.00.

**Judge Julie Marshall** - Judge hearing the Fields' D&N case. Suzanne and her clients have been consistently subjected to retaliation from the bench since 1997 with this judge.

**Anna Hall Owen** - GAL for Ashley. Has privately divulged some 'dirt' on certain other defendants in an effort to insinuate herself into the good graces of Christine and April. Despite her efforts to 'be friends' her true nature is revealed in court.

**Jolene Devries** - Owen's attorney, also witness to and/or participant in prior violations of Suzanne's constitutionally protected rights in Fremont County.

**Dan Kender** - April's first court appointed attorney. Kender cannot claim any immunity, he appears to be the most vulnerable to lose this suit. Given the predatory nature of his co-defendants and his tendency to appear a dolt, it wouldn't surprise us if he becomes the sacrificial lamb.

**Dan Slater** - GAL appointed for April

**LOCATION:** Fremont County, Colorado

**TIMELINE**

**February 2, 2003** - AFAC was contacted by Christine Korn, who requested assistance with April Fields' Dependency & Neglect (D&N) case. Suzanne advised Christine that she could not give any case specific legal advise nor draft legal documents, but she could provide that information to April's attorney. However, Suzanne also told Christine that if April's attorney did not want her services, there was nothing she could do to help with the case. As an alternative, Suzanne asked if April would be interested in have her story included in the documentary video project Suzanne was working on. April agreed to allow Suzanne to have access to all information and to be video taped for inclusion in the documentary. Suzanne requested that Christine provide her with whatever documentation was available for use in the documentary video project.

**February 3, 2003** - April Fields, through Christine, hired Suzanne Shell as an expert consultant and provided her with a limited power of attorney (pursuant to C.R.S. 15-1-1300 et. seq.) so that Suzanne could speak with Dan Kender, and get access to April's case file, which is permitted under the Colorado Children's Code, C.R.S. 19-1-307(2)(e).

**February 25, 2003** - Suzanne sent a letter to Dan Kender, April's attorney, advising him that she had been hired by April, along with a copy of the power of attorney. Suzanne also advised him in a separate fax to instruct the Guardian ad litem (GAL) and caseworkers not to attempt to speak to April unless Kender was present. Suzanne advised Kender not to reveal her association with April because of the very real fear of retaliation against April by DHS and the court (Judge Julie Marshall). Kender never responded.

Sometime between these dates, April files several documents with the court because her efforts to get her attorney to provide effective assistance of counsel were going unanswered. Kender not only refused to return April's calls, he blocked her from sending E-mails to him. Suzanne continued to receive updates on the case but was not aware of what documents April filed or that she was filing them.

**March 13, 2003** - April files a grievance with the Attorney Regulation Counsel against Kender.

**April 14, 2003** - April notifies Rivas and Owen about their acts which violate her rights and demands them to correct or prevent said violations.

**April 15, 2003** - Owen calls April, furious about being 'threatened." She stated her intent to engage in ex-parte communication with the judge regarding this, and advising the judge that April was being uncooperative and difficult. Owen advised April that making all this noise about rights violations and making all these demands was "just making things worse" and stated that Christine should "Butt out" and let April handle her own case. Owen implied that April's attitude would delay reunification.

**April 15, 2003** - A hearing is held without the knowledge or consent of April, at the request of Dan Kender. The purpose of this hearing was to advise the court that Suzanne was associating with April and to seek some remedy for the problems that association posed for Kender and DHS. Judge Marshall appoints a GAL for April. April is never advised of this and finds out only by checking the court file. Transcript of hearing HTML and resultant Status Conference Order

**April 16, 2003** - Motion filed by DHS to add Suzanne Shell to April's D&N case as a special respondent for the purposes of restricting her contact with April. C.R.S. 19-3-503 Special Respondent limitations.

1983Suit

**April 16, 2003** - Meconi filed a complaint with the Attorney Regulation Counsel Unauthorized Practice of Law (UPL) Committee against Suzanne, stating that Suzanne was giving legal advice and drafting documents for April and another client. He based his complaint on the fact that Suzanne had attended and observed court hearings on both cases and enclosed "proof" which consisted solely of documents that are freely available from this and other web sites.

**April 18, 2003** - GAL Anna Owen filed motion in support of DHS motion to add Suzanne as Special respondent.

**April 23, 2003** - Suzanne is served with a copy of the motion (NOT a summons) to add her as Special Respondent to April's case.

**April 25, 2003** - In an effort to prevent DHS and the rest from violating Suzanne's and April's rights, Suzanne filed a complaint (PDF HTML) and a request for a Temporary Restraining Order (TRO) in the U.S. District Court in Denver. The TRO is denied.

**April 26, 2003** - Suzanne meets and speaks with April for the first time. All prior communication has been with Christine.

**April 29, 2003** - Hearing to add Suzanne as Special Respondent. Suzanne is not permitted an opportunity to be heard, however she attempts to submit a Motion and Affidavit for Change of Judge which the judge refuses to hear because she is "not a party" to the case. April and Christine are called as witnesses. The hearing is continued to May 5, 2003. NOTE - the transcript on this case is inaccurate. We had the gallery packed with witnesses who took notes. Items missing from this record include: omitting critical testimony by Christine Korn including but not limited to her testimony that Suzanne advised her during their first conversation that Suzanne could not provide case specific legal advice or draft legal documents but that she could work with Fields attorney as a consultant; and omitting Judge Marshall's verbatim comments to Suzanne including but not limited to "Sit down and shut up" in response to Suzanne's objections to the hearing; and order Suzanne to 'Shut up' when she whispered to Christine but allowed other persons in the gallery to whisper, and regarding the content of Suzanne's actual objections which included but is not limited to being joined to the case as a special respondent and not being allowed to be represented by counsel and not being permitted to cross examine witnesses and evidence or to present evidence. Suzanne was so afraid of being arrested on some trumped-up contempt charge that she removed her jewelry and gave it to her associate to hold in case she was arrested. Additionally, Suzanne and her associate were subjected to intensified search upon entry to the courthouse. Suzanne had already obtained the rules regarding use of recorders and cameras in the public areas of the courthouse and she had her tape recorder with her to document reactions for the documentary. Her associate had his still camera. Judge Marshall sent her bailiff to harass Suzanne and her associate, demanding they return the tools of their trade to the

car before entering the courtroom. Suzanne has never attempted to record in a courtroom without first filing a formal request for Expanded Media Coverage, and has never been subjected to individualized public harassment about the tools of her trade by any other court. She has appeared in many courts around the country without being forced to return her tape recorder to her car before entering a courtroom. Neither has she ever seen another media representative being similarly harassed by this or any other court.

**May 5, 2003** - Suzanne does not appear at this hearing, (transcript of both days PDF HTML) She was not instructed that her appearance was required at the prior hearing, and she has not been served a summons to appear. No more witnesses are examined. The judge orders Suzanne added to the case as a special respondent, orders her to have no contact with April and invalidates the Power of attorney between Suzanne and April. Order. This order effectively imposes a prior restraint on Suzanne's news gathering, and denies April and Suzanne their right to associate. Suzanne's plans to interview April after this hearing are forbidden, which compromises her documentary.

**May 21, 2003** - U.S. District Court orders Suzanne not to act as April's agent under the power of attorney for this case.

**May 21, 2003** - Suzanne filed objection to order and motion to reconsider. Court denies.

The usual flurry of motions and responses are filed, which are ultimately all dismissed pending Suzanne's and April's filings of Supplemental Pleadings.

**May 29, 2003** - April files motion to add Christine as Next Friend.

**June 25, 2003** - Status Conference at U.S. District Court @ 3:30 P.M. During this hearing, Magistrate Judge Wantanabe accuses Suzanne of preparing April's documents. Suzanne has been meticulously avoiding April due to the Fremont County court order and has also not had much contact with Christine for fear of these very allegations resurfacing. Suzanne attempts to impress this upon the judge, who has chosen to interpret her written objection as proof that she is still drafting legal documents for April in violation of the prior court order, that she is not drafting anything for April or even speaking to April. She assures the court that she has not violated its order. The court then turns his attention to Christine, who is sitting in the gallery. She was called to the podium and interrogated and ultimately threatened with UPL. Christine asks the court to clarify that if April is unable to represent herself, and if she cannot obtain a lawyer, does that mean she cannot protect herself when her rights are violated.

The court then declared a settlement conference and had Suzanne and April taken to a conference room while the defendants remained in the courtroom. After some delay, Magistrate Judge Wantanabe demanded to know

1983Suit

Page 7 of 10

what remedies they were seeking. Instead of listening to their reply, he began to badger them about what could happen if they didn't withdraw this suit. He displayed complete ignorance of the Special Respondent provision in the Colorado Children's Code despite the fact that he professed to have been Juvenile Court judge. He demanded to know why Suzanne had to cover this issue, that Channel 9 had already done a piece on this. He also stated that pro-se plaintiffs never win in Federal Court. **His next suggestion was that Suzanne's remedy would have been to violate Judge Julie Marshall's order and be arrested!** Suzanne was appalled that she should be advised to violate a court order! This is exactly the type of conduct her detractors love to accuse her of! She has had to be extremely circumspect in her conduct so as to give nobody any reason to arrest her or prevent her from engaging in her lawful activities or give them any reason to make any potentially valid derogatory statements about her.

He then advised them that he had trained Judge Julie Marshall and really didn't believe she would do what they were accusing her of. He ended by stating that if this case was dismissed, that he could impose court costs and attorney fees on April and Suzanne and they should seriously consider withdrawing their complaint. Suzanne realized this was not a status conference, it was an intimidation session.

As they left the courthouse, they overheard DHS's attorney claim that he had been advised by the court that this case was on a 'fast track.'

**June 26, 2003** - Court denies Next Friend Motion.

**July 10, 2003** - April files supplemental pleading. Suzanne files supplemental pleading.

## Filings:

Scheduling Order

Owen Motion to Dismiss - Suzanne's response to Owen Motion to dismiss. (HTML PDF)

Kender Motion to Dismiss - Suzanne's response to Kender's Motion to dismiss. (HTML PDF)

DHS et. al. Motion to Dismiss - Suzanne's response to DHS Motion to dismiss (HTML part1 HTML part2 PDF) - DHS et.al. Reply in support of Motion to Dismiss

**November 7, 2003** - Suzanne and April file Requests for Admissions, Interrogatories and Production of Documents. Deadline for this discovery passes without the defendants making any discovery requests of Suzanne or April. See below for content of these documents

2/24/2004

**November 25, 2003** - Defendant Kender submits his responses to Suzanne. He has denied or objected to nearly everything, without explanation. Kender's responses to April's requests are all objectioned to. In effect, Kender's replies are non-responsive.

**December 1, 2003** - Defendant Owen files Motion for Protective Orders seeking the court to order that she not be required to comply with discovery requests from Suzanne and April. She fails to conform to D.C.Colo.L.Civ.R (local rule) 7.1(A) *Duty to Confer* before filing a motion. In this motion, she attaches the requests for Admissions, Interrogatories and Production of Documents.

**December 2, 2003** - Pursuant to D.C.Colo.L.Civ.R 7.1(A) Counsel for DHS, Meconi, etc. confers with the plaintiffs and requests additional time to respond to discovery. Suzanne does not oppose his request to seek additional time. April does not respond.

**December 5, 2003** - Defendant DHS, etc. Counsel files motion for Protective Orders (this is a pretty large file). He also attaches all discovery requests to his motion.

This attorney withdrew his request for additional time and decided to also seek protective orders AFTER receiving Owen's Motion for Protective Orders. Prior to this, he expressed no problem with the requests as they were submitted.

**December 16, 2003** - After attempting to confer with Defendants regarding her intention to seek sanctions and offering to resolve the dispute regarding discovery requests, Suzanne files Responses to Strike Owen's motion for Protective Order and DHS's etc. similar motion. She also files Motion for Order Compelling Discovery and Motion for Sanctions. The defendants do not respond to her attempts to confer.

**December 16, 2003** - April discovers a document in the court file which exhibits that DHS is trying to find a way to keep April's case open beyond the 90 days agreed upon.

We must remember, that although Dawn Rivas is named as a defendant in this lawsuit, she is still having contact with April in the capacity as her DHS caseworker. One wonders why the attorney representing her in this lawsuit has *not* advised her not to speak with the plaintiff, April Fields. Even though April is suing Dawn in Federal Court, Rivas is still exercising control over April's D&N case. She literally confessed to April that she had no choice in what she was doing to April and Ashley with the DHS case, stating that her superiors were making her do it - she was instructed to follow Meconi's instructions explicitly. It is worthy to note that Rivas signed the "Report to the Court" that April discovered, and as such, is personally accountable for that endorsement (remember, Rivas, like the other defendants, has been sued in her personal and professional capacity). While this may appear to be an egregious conflict of interest to most people, that obvious fact appears to have escaped the notice of Judge Marshall and the defendants, or perhaps, they simply attach little or no relevance to it.

Like many readers undoubtedly wonder, AFAC can only arrive at one conclusion to explain why the defendants named on this lawsuit are still exercising a position of authority and control over April's D&N case - it's pretty transparent to anyone who has a reasonably developed sense of right and wrong.

**December 18, 2003** - The district court has NOT dismissed this lawsuit yet, and April refuses to drop her complaint. The defendants, who have absolute power and control over April and her daughter, have escalated their efforts against April, and threatened Ashley's continued placement in her mother's home in a D&N court hearing held today.

April was concerned that her attorney, Roger Larson, would not attempt to rebut the report, so she prepared her own rebuttal and statement to be submitted at this hearing. Judge Marshall appeared intently interested in who wrote that report, more interested in the author than in the facts which were contained in the report. She reportedly badgered poor April who kept insisting that her brother helped her write it. Her Honor stated that she did not believe April and continued to insist she could not have looked up the laws. April said she found them on the Internet. Her Honor, Owen and April's GAL, Dan Slater, reportedly were vicious toward April. April was furious at Slater for jeopardizing her legal interests so severely in this court hearing.

While acknowledging on the record that April has successfully completed the treatment plan, and that Ashley has been well cared for, they raised an entirely new issue. Based on the reports which April had found 2 days earlier, Judge Marshall once again added a Special Respondent to April's case, April's friend Thad. Thad never received a summons as required by statute and did not appear in court. You see, Thad lives in another county, just like Suzanne does. Thad had no opportunity to hear the allegations against him, to hear the evidence against him, to challenge the evidence against him, and has no right of appeal. Evidently, Judge Marshall is a law unto herself. April's case has been extended to March.

Threats issued - AFAC has received a report that some of the defendants, and others associated with them, have threatened to 'get' Suzanne Shell, describing certain tactics explicitly.

Magistrate Judge Wantanabe's Recommendation on Defendants' Motions to Dismiss - recommending dismissal. This is a Paperport self-viewing file - no reader required, download and save, double click to view.

## Courage is resistance to fear, mastery of fear - not absence of fear. Mark Twain

1983Suit

[Home] [Warning] [We Believe] [State by State]

Support the American Family Advocacy Center by Purchasing your books, videos and music through our website and Amazon.com

IN ASSOCIATION WITH
amazon.com

Free Speech TV affiliate - a portion of any purchase you make from Free Speech TV goes to support our work at AFAC. Purchase your Dish satellite system here.



Free Speech TV

EMAIL THE AMERICAN FAMILY ADVOCACY CENTER *** Our client lists are confidential. Please do not ask who disclosed certain information to FAC. This information is not available to the public and will be vigorously guarded from disclosure to protect those clients whose children remain at risk of state-sanctioned kidnaping of their children.
Information included on these pages is not legal advice, we are not attorneys. You are advised to consult with an attorney on any legal matters.
Any legal documents on this site were prepared and/or drafted by attorneys or under the supervision of an attorney, or by pro-se respondent parents and/or subject children and are published here with their permission.
ALL MATERIAL ON THESE PAGES IS COPYRIGHT 1996-2002 SUZANNE SHELL, reproduction without written permission is prohibited.

COPYRIGHT NOTICE - Copyright 1996-2004, Suzanne Shell and individual contributors where appropriate. The content if this website is intended to generate income, it is not free if you intend to print or distribute anything electronically fixed herein.

Reproduction and distribution prohibited without permission. This website is intended to be viewed on a computer only. Permission to reproduce this website, by any method including but not limited to electronically or hard copy, may be purchased for $5,000 (five thousand dollars) per printed page per copy, in advance of printing. We accept Visa, Mastercard, American Express, check, money order or cash. WE DO NOT ACCEPT GOVERNMENT PO'S - this fee schedule specifically applies to any state agency, employee, contractor or CPS service provider. CPS agencies and co-conspirators have found this site to be extremely valuable, preferring the contents of this site to any other site. Hence, the premium prices.

If this intellectual property is stolen or used to harm any member or associate family of any Family Rights group, the copyright holder will seek appropriate remedies under copyright laws.

Members of American Family Rights Association (AFRA) ONLY may copy and distribute website material for education and training purposes without fee, provided the entire copyright notice is included. Parents seeking assistance with their own cases may freely use documents as models for their own cases.

http://www.profane-justice.org/html/1983suit.html

2/24/2004